FILED

Arick W. Fudali, Esq.
California Bar No. 296364
afudali@hermanlaw.com
Jeffrey M. Herman
(pending pro hac vice admission)
Florida Bar No. 521647
jherman@hermanlaw.com
Herman Law
3351 NW Boca Raton Boulevard
Boca Raton FL, 33431
Tel: 305-931-2200
Fax: 305-931-0877
www.hermanlaw.com

2014 JUN 23  PM 1:40

C....
C....
LOS ANGELES ...

BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO: CV14-4840

| | |
|---|---|
| MICHAEL F. EGAN, III | ) COMPLAINT ALLEGING DAMAGES FOR: |
| Plaintiff, | ) |
| | ) 1.  Childhood Sexual Abuse (Oral Copulation) |
| v. | ) |
| | ) 2.  Childhood Sexual Abuse (Sodomy) |
| | ) |
| JOHN DOE NO. 4, | ) 3.  Sexual Battery |
| | ) |
| Defendant. | ) __DEMAND FOR JURY TRIAL__ |
| | ) |

Plaintiff MICHAEL F. EGAN, III, hereby sues Defendant JOHN DOE, and states the following:

## INTRODUCTION

This is an action for damages arising from the childhood sexual abuse of MICHAEL F. EGAN, III by Defendant, JOHN DOE NO. 4.  JOHN DOE NO. 4 manipulated his power,

wealth, and position in the entertainment industry to sexually abuse and exploit the underage Plaintiff through the use of drugs, alcohol, threats, and inducements which resulted in Plaintiff suffering catastrophic psychological and emotional injuries.  Defendant DOE did so as part of a group of adult males similarly positioned in the entertainment industry that maintained and exploited boys in a sordid sex ring.  A Hollywood mogul must not use his position to sexually exploit underage actors.

## JURISDICTION, VENUE, AND PARTIES

1.    Plaintiff, MICHAEL F. EGAN, III ("Plaintiff"), is a citizen and resident of Clark County, Nevada, and is *sui juris.*

2.    Defendant, JOHN DOE NO. 4 ("DOE"), is a citizen and resident of the State of California and is *sui juris.*

3.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000.00 and the action is between citizens of different states.

4.    A substantial part of the acts, events, or omissions giving rise to Plaintiff's claims arose in and around Los Angeles, California.  Therefore, pursuant to 28 U.S.C. §1391(b)(2), venue is proper in the Central District of California.

## FACTUAL ALLEGATIONS

5.    When Plaintiff was in elementary school in the Midwest, he began modeling for print advertising.  As time passed, he performed in school plays and was ultimately encouraged to pursue acting professionally.  For a period of time, he moved with his mother to New York and engaged in modeling for print advertising and in television commercials.

6.     When Plaintiff was 14 or 15, he moved to the Los Angeles, California, area with his family at the suggestion of his talent manager to further his acting career, and continued to model. He dreamed and aspired to an acting career.

7.     Plaintiff attended a very small private high school in the San Fernando Valley in the Los Angeles, California, area. Plaintiff was short and of a slight stature.

8.     There were approximately four children in Plaintiff's grade, one of whom was Scott Shackley ("Scott"), whom Plaintiff considered a close friend. In early or mid-1998, Scott introduced Plaintiff to his older brother Chad Shackley ("Chad") who, upon information and belief, was Scott's caretaker. Chad resided in a mansion in Encino, California, which was commonly referred to as the M & C Estate. Plaintiff would often go to the M & C Estate to visit Scott. Marc Collins-Rector (Collins-Rector) also resided in the M & C Estate as did Chad, Scott, and Brock Pierce ("Pierce").

9.     At the time, upon information and belief, Collins-Rector was the Chairperson of the Board of Directors of an online entertainment business known as Digital Entertainment Network (DEN). Both Chad and Collins-Rector were principals in DEN. Defendant DOE was a shareholder of DEN. Collins-Rector was instrumental in promoting and marketing DEN as a commercial venture that would revolutionize television and online entertainment, and DEN was considered at the time to be in the vanguard of the growing online entertainment industry. DEN was a well-known enterprise which attracted a significant number of prominent investors, including persons and organizations that were renowned in the entertainment industry such as Defendant DOE.

10.     Upon information and belief, Collins-Rector, Pierce, and Chad hosted many notorious parties on the grounds of the M & C Estate which were attended by numerous young

males who had been lured to the M & C Estate as well as by prominent investors and persons that were renowned in the entertainment industry such as Defendant DOE.  The parties were typically sordid and featured sexual contact between adult males and the many teenage boys who were present for the parties.  Further, the parties included the distribution of drugs and alcoholic beverages to the teenage boys at the party.  Upon information and belief, the nature of the parties was well-known and notorious among many men in the Hollywood entertainment industry.

11.     Soon after Plaintiff was introduced to Collins-Rector, Pierce, and Chad, the three men began systematically and routinely grooming, threatening, drugging, coercing, and brainwashing Plaintiff into a sexual abuse victim.

12.     As residents of the M & C Estate, primary organizers of the alcohol and drug induced sex parties, and the men initially and routinely responsible for threatening, drugging, and coercing Plaintiff into a sexual abuse victim, Plaintiff viewed Collins-Rector, Pierce, and Chad as the "ringleaders" of the culture of sexual abuse and exploitation that took place at the M & C Estate.

13.     Collins-Rector, Pierce, and Chad often told Plaintiff in a bullying manner that they had "gaydar" and knew that Plaintiff was homosexual, a characterization which Plaintiff, who is heterosexual, categorically denied.  He was told that he was part of the "group", referring to the numerous young males who were lured to the M & C Estate for the purpose of sexual contact with the adult males who visited the M & C Estate ostensibly for recreational and business purposes.  He was advised that those adult males controlled Hollywood and would destroy his hopes and dreams of an acting career if he was not compliant.  They threatened to "eliminate" him and his family, and told him that they were monitoring not only his phone, but

Complaint - 4

those of his family members, and asserted he would be "destroyed" if he ever disclosed the unconscionable activities that occurred at the Estate.

14.     The M & C Estate contained a number of bars and was replete with alcohol and drugs.  Collins-Rector, Pierce, and Chad strenuously pressured the teenagers who were there, including Plaintiff, to ingest the copiously available drugs and alcohol. Plaintiff was often forced to consume alcoholic beverages and drugs, and was also surreptitiously administered drugs when they were placed in beverages that he consumed.  Collins-Rector, Pierce, and Chad would often place illicit drugs such as Xanax, Rohypnol, and Ecstacy in Plaintiff's drink.  Plaintiff would then ingest the drugs unknowingly.  On some occasions, Pierce, who often possessed a bag full of a variety of illicit drugs, bragged about drugging Plaintiff, stating "I just gave you something to make you feel a little more relaxed."

15.     Defendant DOE was often present at the M & C Estate when these drug and alcohol-related activities were occurring and knew, or should have known, that such was taking place.

16.     During the infamous and degenerate parties at the M & C Estate, the adult males engaged in sexual contacts with the Plaintiff, as well as the other boys present.  Plaintiff, as an underage minor, could not and did not freely, voluntarily, or knowingly consent to these sexual interactions, and often attempted to resist them.

17.     On several occasions, Collins-Rector, Pierce, and Chad engaged in unwanted sexual acts with Plaintiff through physical threats, drugs, or other means of coercion.

18.     On several occasions when Plaintiff resisted submitting to sexual contact, Collins-Rector physically and aggressively held Plaintiff down in order to facilitate his sexual victimization.

Complaint - 5

19.     On one occasion when Plaintiff was being resistant to sexual contact, Collins-Rector called him into the master bedroom of the M & C Estate.  Collins-Rector pointed a firearm at Plaintiff and threatened to pull the trigger if his resistance to submitting to sexual contact continued.  Collins-Rector then forcibly locked Plaintiff for a period of time in a gun safe which was located in a master bedroom closet.

20.     As a routine visitor to the M & C Estate, Defendant DOE witnessed the abusive and detrimental influence Collins-Rector, Pierce, and Chad had over Plaintiff.  After observing the systematic threats, coercion, drugging, and brainwashing of Plaintiff into a sexual abuse victim by Collins-Rector, Pierce, and Chad, Defendant DOE seized the opportunity to take advantage of Plaintiff to satisfy his depraved sexual desires.

21.     Defendant DOE was present for, and participated in, several threatening communications during which he told Plaintiff how the adults who resided in or frequented the M & C Estate controlled Hollywood and could decide whether Plaintiff's career aspirations and hopes would be realized. Defendant DOE was also present during times when threats were relayed to Plaintiff concerning his and his family's well-being by Collins-Rector, Pierce, and Chad. Defendant DOE often told Plaintiff that he would find a role for him in television shows, and that he would use his connections to further Plaintiff's acting career.

22.     Defendant DOE sexually abused Plaintiff numerous times in California at the M & C Estate by sodomizing him, forcing him to participate in acts of oral copulation, and inducing him to engage in actions involving the fondling of genitals.  Defendant DOE sexually abused Plaintiff approximately 25 times beginning when Plaintiff was approximately 15 years old.  The sexual abuse took place in California at the M & C Estate as well as other Los Angeles area homes.

23.     In an attempt to manipulate his compliance with the sexual demands of those adults who frequented the M & C Estate, Plaintiff was placed on DEN's payroll as an actor in Royal Standard, an online television show broadcast on DEN's network, and was paid approximately $1,500.00 per week.  Plaintiff additionally was paid approximately $600.00 per week from different accounts without any designation of job duties, title, or position. Upon information and belief, payments of this nature were made to many of the teenage males lured to the M & C Estate to have sex with the adults who resided there or visited there for recreational and business purposes.

24.     During and after the sexual abuse by Defendant DOE, Defendant DOE, through DEN, made advance or partial payment of damages as an accommodation to Plaintiff because of the childhood sexual abuse he committed on Plaintiff. Further, Defendant DOE personally paid multiple installments of cash to Plaintiff during and after the sexual abuse. Defendant DOE made these advance and partial payments to Plaintiff with the intent of lulling Plaintiff into a false sense of complacency about the need to sue Defendant DOE for childhood sexual abuse. At no time did Defendant DOE notify Plaintiff in writing or otherwise of the statute of limitations applicable to Plaintiff's childhood sexual abuse claim against Defendant DOE, as required by California Insurance Code §11583. Plaintiff was not represented by counsel in relation to the childhood sexual abuse committed by Defendant DOE at the time he was receiving those payments.  To the date of filing this Complaint, Defendant DOE has failed to provide Plaintiff with written notice of the applicable statute of limitations. Defendant DOE's failure to do so, therefore, has continuously tolled the statute of limitations for when Plaintiff may bring this childhood sexual abuse lawsuit against Defendant DOE.

25.    Plaintiff moved back to Nebraska in an attempt to leave the sexual abuse behind him. Plaintiff's adjustment became impaired and Plaintiff began abusing alcohol and utilizing the psychological defense mechanisms of repression, denial, minimization, and dissociation to suppress his conscious awareness of the childhood sexual abuse by Defendant DOE and its relationship to his psychological injuries.  As a result of the utilization of these defense mechanisms, Plaintiff "blocked out" from his conscious certain aspects of the childhood sexual abuse perpetrated on him during his time in California, including the sexual abuse by Defendant DOE, and was unable to recognize or connect his severe psychological and emotional injuries to the sexual abuse perpetrated by Defendant DOE.

26.    Although Plaintiff suppressed his conscious awareness of the childhood sexual abuse by Defendant DOE and its relationship to his psychological damages, Plaintiff was unable to escape the pervasive memories of the threats, coercion, drugging, and constant childhood sexual abuse by Collins-Rector, Chad Shackley, and Brock Pierce, whom he considered the "main members of the wolfpack."  As a result, Plaintiff attributed all of his psychological and emotional injuries to those men.

27.    As Plaintiff grew older, his psychological injuries and alcoholism grew more severe and more debilitating to the point in which Plaintiff entered trauma therapy in approximately June, 2013.  Through trauma therapy and quitting alcohol abuse, Plaintiff challenged his maladaptive defense mechanisms. This allowed Plaintiff to finally recognize the childhood sexual abuse by Defendant DOE and how it contributed to the severe psychological and emotional injuries for which he was suffering.

28.    As an actual, legal, and proximate result of the childhood sexual abuse of Plaintiff by Defendant DOE, Plaintiff has suffered, is suffering, and will continue to suffer: a) severe

1  psychological, mental, and emotional injuries and trauma; b) expenses for counseling and

2  therapy for the psychological, mental and emotional injuries and trauma; c) loss of enjoyment of

3  life; d) shame, humiliation, and indignity; and e) substantial future expenses for counseling.

4

## COUNT I
## CHILDHOOD SEXUAL ABUSE
### (Violation of California Penal Code §288a –
### Oral Copulation with person who is under 18 years of age)

5

6

7

8      29.    Plaintiff repeats and realleges paragraphs 1 through 28 above.

9      30.    During the time Plaintiff was under the age of eighteen (18) years old and

10  Defendant DOE was and adult male, Defendant DOE performed oral copulation on Plaintiff's

11  genitals in California.

12      31.    During the time Plaintiff was under the age of eighteen (18) years old and

13  Defendant DOE was and adult male, Defendant DOE coerced Plaintiff to perform oral

14  copulation on Defendant DOE's genitals.

15

16      32.    These acts of oral copulation occurred on more than one occasion during the time

17  Plaintiff was under the age of eighteen (18), and Defendant DOE was and adult male.

18      33.    As an actual, legal, and proximate result of the childhood sexual abuse through

19  oral copulation of Plaintiff by Defendant DOE, Plaintiff has suffered, is suffering, and will

20  continue to suffer:  a) severe psychological, mental, and emotional injuries and trauma; b)

21  expenses for counseling and therapy for the psychological, mental and emotional injuries and

22  trauma; c) loss of enjoyment of life; d) shame, humiliation, and indignity; and e) substantial

23  future expenses for counseling.

24

25      34.    Plaintiff did not discover and could not reasonably have discovered the

26  connection between the childhood sexual abuse through oral copulation by Defendant DOE and

27  his psychological injuries before approximately June, 2013.

28

## COUNT II
### CHILDHOOD SEXUAL ABUSE
#### (Violation of California Penal Code §286 –
#### Sodomy with person who is under 18 years of age)

35.     Plaintiff repeats and realleges paragraphs 1 through 28 above.

36.     During the time Plaintiff was under the age of eighteen (18) years old and Defendant DOE was and adult male, Defendant DOE performed sodomy on Plaintiff by sexually penetrating Plaintiff's anus with Defendant DOE's penis.

37.     Defendant DOE sodomized Plaintiff on more than one occasion during the time Plaintiff was under the age of eighteen (18) and Defendant DOE was an adult male.

38.     As an actual, legal, and proximate result of the childhood sexual abuse through sodomy of Plaintiff by Defendant DOE, Plaintiff has suffered, is suffering, and will continue to suffer: a) severe psychological, mental, and emotional injuries and trauma; b) expenses for counseling and therapy for the psychological, mental and emotional injuries and trauma; c) loss of enjoyment of life; d) shame, humiliation, and indignity; and e) substantial future expenses for counseling.

39.     Plaintiff did not discover and could not reasonably have discovered the connection between the childhood sexual abuse through sodomy by Defendant DOE and his psychological injuries before approximately June, 2013.

## COUNT III
### COMMON LAW SEXUAL BATTERY
#### (Violation of California Civil Code §1708.5)

40.     Plaintiff repeats and realleges paragraphs 1 through 28 above.

41.     Defendant DOE acted with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff and a sexually offensive contact with Plaintiff directly or indirectly

Complaint - 10

1   resulted by placing his penis, and/or by placing his mouth or tongue in contact with the genitals

2   of Plaintiff.

3       42.     As an actual, legal, and proximate result of the childhood sexual abuse through

4   sodomy of Plaintiff by Defendant DOE, Plaintiff has suffered, is suffering, and will continue to

5   suffer: a) severe psychological, mental, and emotional injuries and trauma; b) expenses for

6   counseling and therapy for the psychological, mental and emotional injuries and trauma; c) loss

7

8   of enjoyment of life; d) shame, humiliation, and indignity; and e) substantial future expenses for

9   counseling.

10      43.     Plaintiff did not discover and could not reasonably have discovered the

11  connection between the childhood sexual abuse by Defendant DOE and his psychological

12

13  injuries before approximately June, 2013.

14      WHEREFORE, Plaintiff demands against Defendant JOHN DOE:

15  1) compensatory damages; 2)special damages; 3) punitive and exemplary damages; 4) costs of

16

17  suit; 5) reasonable attorney fees; 6) post-judgment interest as permitted by law; and 7) such other

18  relief as the Court may deem proper.

19                          **DEMAND FOR JURY TRIAL**

20  Plaintiff, MICHAEL F.  EGAN; HEREBY demands a jury trial.

21

22  Dated: June 20  , 2014.        By: _____

23                                      Arick W. Fudali, Esq.
                                        California Bar No. 296364
24                                      afudali@hermanlaw.com
                                        Jeffrey M. Herman
25                                      *(pending application for the approval of pro*
                                        *hac vice admission)*
26                                      Florida Bar No. 521647
27                                      jherman@hermanlaw.com
                                        Herman Law
28                                      3351 NW Boca Raton Boulevard

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Boca Raton FL, 33431
Tel: 305-931-2200
Fax: 305-931-0877
www.hermanlaw.com

Complaint - 12